```
CODY JAFFE (State Bar No. 215301)
LAW OFFICES OF CODY JAFFE
100 Pine Street, Suite 1250
San Francisco, CA  94111
Telephone: (415) 524-3268
Facsimile: (888) 971-3957
Email: cody@codyjaffelaw.com

Attorney for Plaintiff
DANIEL LUCAS
```

UNITED STATES DISTRIC COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DANIEL LUCAS, an individual,<br><br>          Plaintiff,<br><br>     vs.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION, a New York corporation; and DOES 1-10, inclusive,<br><br>          Defendants. | Case No.: 3:20-cv-00141<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Breach of Contract<br>2. Breach of Implied Covenant of Good Faith & Fair Dealing<br>3. Intentional Misrepresentation<br>4. False Promise<br>5. Negligent Misrepresentation<br>6. Quasi-Contract/Quantum Meruit<br>7. Waiting Time Penalties<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff DANIEL LUCAS ("Plaintiff"), for his Complaint against defendants INTERNATIONAL BUSINESS MACHINES CORPORATION ("Defendant") and DOES 1-10, inclusive, states and alleges as follows:

**INTRODUCTION**

1. This action arises from Defendant's breaches of the employment agreement, misrepresentations and false promises made to Plaintiff, and failure to pay Plaintiff the reasonable value of his services rendered, resulting in Plaintiff not receiving commissions he earned as a sales representative for Defendant.  As Defendant had not paid Plaintiff all compensation owed as of the time of termination of his employment, Defendant has incurred "waiting time" penalties

pursuant to California Labor Code section 203.

## PARTIES

2. Plaintiff is a natural person who resides in the State of California and is a former employee of Defendant.

3. Defendant is a New York corporation whose headquarters is in the State of New York. Defendant conducts business throughout the United States and around the world selling computers, other hardware, software, cloud-based services, and cognitive computing services.

4. DOES 1-10 are other individuals and/or entities who aided, participated in, ratified, unjustly benefited from, or are otherwise responsible for the wrongful activities complained of herein whose identities, place(s) of residence, and/or complicity in any potential wrongdoing are presently unknown to Plaintiff. Plaintiff will amend his complaint to allege the true names and capacities of DOES 1-10 once they are ascertained. Plaintiff makes all of his allegations in this Complaint against DOES 1-10; where such allegations are not made with personal knowledge as to DOES 1-10, they are made upon information and belief.

5. At all relevant times, each defendant was an agent, principal, employee, employer, or joint venturer of each of the remaining defendants and was at all times acting within the course and scope of such agency, employment or joint venture, and/or each defendant has engaged in, ratified, approved, benefited from, or authorized the acts of each of the remaining defendants with full knowledge of said acts.

## JURISDICTION AND VENUE

6. The federal courts have jurisdiction over this matter, as Plaintiff and Defendant reside in different states (California and New York, respectively).

7. Venue is proper in this District in that Defendant conducts voluminous business and has large office locations within the territory of the Northern District of California, and Plaintiff's sales territory while employed by Defendant encompassed the Western United States, including all of California.

## GENERAL FACTUAL ALLEGATIONS

8. Plaintiff worked for a smaller company that was acquired by Defendant in or

around 2014, becoming an employee of Defendant on or about April 1, 2014.

9. Plaintiff continued in a similar capacity as a sales representative selling the same products and services after the acquisition by Defendant.

10. Plaintiff sold subscriptions to corporate customers, typically on a year-to-year basis, for software and cloud storage access.

11. Plaintiff's employment agreement with Defendant included compensation in the form of a base salary, plus commissions.

12. The key terms and conditions of Plaintiff's commission compensation were set forth in Incentive Plan Letters (IPL's), which were approved by Plaintiff's direct supervisor, Kevin Williams, and Mr. Williams' supervisor, Meghan McCracken.

13. Each IPL covered a 6-month period: either the first half or second half of each calendar year.  The IPL's were emailed to Plaintiff every January and July from a departmental email address with no individual sender identified.

14. At around the same times Plaintiff received the IPL's, Mr. Williams emailed to Plaintiff and the whole sales team a list of corporate customers considered to be within their territory and sales group, meaning they would receive commissions for sales to those entities during that IPL period.

15. The IPL's at issue in this lawsuit (for second half of 2018 and first half of 2019) stated Plaintiff would receive either an eight percent or five percent (depending on the bundle of products and services the customer purchased) up-front commission on the total revenue amount of the sale, plus another three percent commission on certain sales, divided into monthly installments throughout the life of the particular subscription.

16. The IPL's did not distinguish a sale to a first-time customer from a sale that renewed or expanded a previous sale to an existing customer.

17. The amount and type of labor expended by the sales representative for renewal and expansion sales were similar to that expended for initial sales.

18. Defendant's past practice has been to pay commissions on renewal and expansion sales on the same terms as initial sales, hence Plaintiff had developed an understanding and

expectation that those sales qualified for commissions just like initial sales.

19. However, for approximately Plaintiff's final year of employment at Defendant, Defendant failed to pay him commissions for his renewal and expansion sales, although there had been no communication before Plaintiff had performed the work triggering a commission indicating that Defendant would no longer pay commissions on such sales.

20. In addition, Defendant failed to credit several of Plaintiff's 2018 sales for purposes of calculating and paying his three percent monthly commissions in January through June of 2019.

21. All sales for which Plaintiff claims unpaid commissions were to customers who were on the list of customers identified as being in his team's territory and sales group during the applicable IPL periods.

22. Plaintiff and his entire sales group received an email from Defendant's senior vice president, Jason Gartner, on or around October 11, 2018 communicating a sales incentive to the effect that for sales of certain products in the fourth quarter of 2018, the sales representative who made the sale would continue to receive the three percent monthly commissions in 2019, even if that customer was moved to a different territory or sales group.

23. This particular incentive applied to at least one (possibly more) of Plaintiff's sales, to customer Dolby.  Plaintiff should have kept receiving the three percent monthly commissions for the Dolby sale in 2019 (and possibly other sales), despite Dolby being moved to a different territory or sales group in 2019, but Defendant did not pay him those commissions.

24. Plaintiff complained to Defendant about all his unpaid earned commissions and followed up on those complaints steadily for many months.

25. Plaintiff finally resigned effective July 19, 2019 because Defendant had been so egregiously shorting him on commissions, and the internal process to attempt to obtain relief was going nowhere.

26. In emails Plaintiff exchanged with Mr. Williams, Ms. McCracken, and Defendant's commission analyst Andre Scharbel Moreira on July 19, July 22, July 23, and July 30 (all 2019), Mr. Williams and Mr. Moreira acknowledged that Plaintiff was owed commissions

for which he still has not been paid.

27. Plaintiff also has not received all commissions owed with respect to sales he made in May and June of 2019.

28. In August 2019, Defendant paid Plaintiff a portion of the commissions owed to him for May and June sales, but it has never paid the remainder owed.

29. With respect to all the sales in question, the sales were final, Plaintiff's work obtaining the sales had been completed prior to his resignation, and the customers paid Defendant's invoices associated with those sales.

30. Defendant knew the commission amounts owed to Plaintiff, or at least they were numerically ascertainable, as of the date of his resignation, July 19, 2019.

31. In fact, Plaintiff sent an email to Mr. Williams containing his ten-day resignation notice on July 9, 2019, in which he provided details explaining the basis of his claim for unpaid three percent monthly commissions during the months of January through June of 2019.

32. Under California law, the termination of Plaintiff's employment cannot lawfully cause a forfeiture of commissions already earned.

33. The commissions Defendant owes to Plaintiff include approximately $54,000 for May and June 2019 sales; approximately $33,000 for three percent monthly commissions that should have been paid in January through June of 2019 related to sales made in 2018; and approximately $132,000 for renewal and expansion sales throughout approximately Plaintiff's final year of employment at Defendant.

34. Defendant knows exactly which sales are at issue and how the amount of Plaintiff's claimed unpaid commissions were derived because counsel for Plaintiff supplied documents specifying that information in pre-litigation correspondence.

**FIRST CAUSE OF ACTION**

**(Breach of Contract)**

35. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint.

36. Plaintiff had an employment agreement with Defendant by which Plaintiff would

1 engage in sales activities on behalf of Defendant in exchange for (among other emoluments) a salary and commissions.

37. The commission-related terms of the agreement were contained in the semi-annual IPL's, the lists of customers in Plaintiff's sales team's territory and sales group that Defendant supplied semi-annually, and occasional additional incentives communicated in emails, such as the one described above related to fourth quarter 2018 sales that applied to the Dolby sale (and possibly other sales).

38. Plaintiff accepted the commission terms periodically offered by Defendant by continuing to work for Defendant.

39. At all relevant times, Plaintiff performed the work expected of him, met or exceeded Defendant's expectations, and completed all work expected of the sales representative with respect to each of the sales for which Defendant owes Plaintiff commissions.

40. In the manner described in the "General Factual Allegations" section above, Defendant has breached the employment agreement by not paying commissions Plaintiff had earned according to the terms of the parties' agreement.

41. Plaintiff has been damaged by Defendant's breach in the amount of approximately $219,000 in unpaid, earned commissions.

42. Pursuant to Labor Code sections 218.5 and 218.6 and Civil Code section 3287, Plaintiff is entitled to recover his attorney's fees, costs, and prejudgment interest on the unpaid commissions.

**SECOND CAUSE OF ACTION**

**(Breach of Implied Covenant of Good Faith & Fair Dealing)**

43. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint.

44. There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.

45. Plaintiff and Defendant had an employment agreement that included terms and

1  conditions governing Plaintiff's receipt of commissions for sales of Defendant's products and
2  services.
3    46.   The commission-related terms of the agreement were contained in the semi-annual
4  IPL's, the lists of customers in Plaintiff's sales team's territory and sales group that Defendant
5  supplied semi-annually, and occasional additional incentives communicated in emails, such as the
6  one described above related to fourth quarter 2018 sales that applied to the Dolby sale (and
7  possibly other sales).
8    47.   Although Plaintiff satisfied all the terms and conditions for receiving commissions
9  that had been agreed-upon, Defendant has acted in bad faith and unfairly by failing and refusing
10 to pay the commissions it owes and/or by changing those terms and conditions unilaterally after
11 they were earned in order to justify not paying.
12   48.   Defendant's breach entitles Plaintiff to recover the full amount of unpaid
13 commissions he was supposed to receive under his employment agreement, which totals
14 approximately $219,000.
15   49.   Pursuant to Labor Code sections 218.5 and 218.6 and Civil Code section 3287,
16 Plaintiff is entitled to recover his attorney's fees, costs, and prejudgment interest on the unpaid
17 commissions.

### THIRD CAUSE OF ACTION
### (Intentional Misrepresentation)

20   50.   Plaintiff realleges and incorporates by reference the allegations set forth in the
21 foregoing paragraphs of this Complaint.
22   51.   Defendant made representations to Plaintiff that it would abide by certain terms
23 and conditions governing the earning and payment of commissions for sales of Defendant's
24 products and services.
25   52.   The representations comprised the semi-annual IPL's, the lists of customers in
26 Plaintiff's sales team's territory and sales group that Defendant supplied semi-annually, and
27 occasional additional incentives communicated in emails, such as the one described above related
28 to fourth quarter 2018 sales that applied to the Dolby sale (and possibly other sales).

53. These representations were false, as Defendant has not paid Plaintiff all commissions he earned according to the terms and conditions communicated to Plaintiff.

54. Defendant knew its representations to Plaintiff were false when they were made, or made them recklessly and without regard to their truth, as indicated by its unexplained failure to pay commissions, in some cases very soon after its representations had been communicated to Plaintiff, in overt, obvious defiance of the unambiguous terms and conditions that had been communicated to Plaintiff.

55. Defendant made the representations to Plaintiff with the intention that Plaintiff would rely on them, to induce Plaintiff (through expectations of enticing compensation) to continue his employment as a competent sales representative for Defendant.

56. Plaintiff reasonably relied on Defendant's representations by continuing to perform his duties, under the belief that Defendant would abide by its representations regarding commissions, as Defendant had abided by its commission-related representations in the past, including but not limited to paying commissions on renewal and expansion sales.

57. Plaintiff was harmed as a direct and proximate consequence of Defendant's wrongful conduct in that he continued performing his duties competently for months without receiving approximately $219,000 in commissions he had earned.

58. Ultimately, Plaintiff had no reasonable choice but to resign his employment at Defendant, as it became clear that Defendant was not going to follow through on its representations regarding the payment of commissions.

59. In this manner, Defendant's intentional misrepresentations also caused Plaintiff to suffer loss of all his income for a period of time and severe emotional distress in connection with his loss of employment.

60. Defendant's actions were committed with malice, fraud and/or oppression, with the intent to injure Plaintiff or with reckless disregard for the injury its actions would cause to Plaintiff.  As such, Defendant is liable to Plaintiff for punitive damages in an amount sufficient to punish it for its wrongs and deter future similar conduct.

61. Pursuant to Civil Code section 3287, Plaintiff is entitled to recover prejudgment

interest as of the time any specific amounts of damages were ascertainable.

## FOURTH CAUSE OF ACTION

### (False Promise)

62. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint.

63. Defendant made promises to Plaintiff that it would abide by certain terms and conditions governing the earning and payment of commissions for sales of Defendant's products and services.

64. The promises comprised the semi-annual IPL's, the lists of customers in Plaintiff's sales team's territory and sales group that Defendant supplied semi-annually, and occasional additional incentives communicated in emails, such as the one described above related to fourth quarter 2018 sales that applied to the Dolby sale (and possibly other sales).

65. These promises were broken, as Defendant has not paid Plaintiff all commissions he earned according to the terms and conditions communicated to Plaintiff.

66. Defendant knew its promises to Plaintiff were false when they were made, or made them recklessly and without regard to their truth, as indicated by its unexplained failure to pay commissions, in some cases very soon after its promises had been communicated to Plaintiff, in overt, obvious defiance of the unambiguous terms and conditions that had been communicated to Plaintiff.

67. Defendant made the promises to Plaintiff with the intention that Plaintiff would rely on them, to induce Plaintiff (through expectations of enticing compensation) to continue his employment as a competent sales representative for Defendant.

68. Plaintiff reasonably relied on Defendant's promises by continuing to perform his duties, under the belief that Defendant would abide by its promises regarding commissions, as Defendant had abided by its commission-related promises in the past, including but not limited to paying commissions on renewal and expansion sales.

69. Plaintiff was harmed as a direct and proximate consequence of Defendant's wrongful conduct in that he continued performing his duties competently for months without

1 receiving approximately $219,000 in commissions he had earned.

2     70.    Ultimately, Plaintiff had no reasonable choice but to resign his employment at Defendant, as it became clear that Defendant was not going to follow through on its promises regarding the payment of commissions.

    71.    In this manner, Defendant's false promises also caused Plaintiff to suffer loss of all his income for a period of time and severe emotional distress in connection with his loss of employment.

    72.    Defendant's actions were committed with malice, fraud and/or oppression, with the intent to injure Plaintiff or with reckless disregard for the injury its actions would cause to Plaintiff. As such, Defendant is liable to Plaintiff for punitive damages in an amount sufficient to punish it for its wrongs and deter future similar conduct.

    73.    Pursuant to Civil Code section 3287, Plaintiff is entitled to recover prejudgment interest as of the time any specific amounts of damages were ascertainable.

### FIFTH CAUSE OF ACTION
### (Negligent Misrepresentation)

    74.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint.

    75.    Defendant made representations to Plaintiff that it would abide by certain terms and conditions governing the earning and payment of commissions for sales of Defendant's products and services.

    76.    The representations comprised the semi-annual IPL's, the lists of customers in Plaintiff's sales team's territory and sales group that Defendant supplied semi-annually, and occasional additional incentives communicated in emails, such as the one described above related to fourth quarter 2018 sales that applied to the Dolby sale (and possibly other sales).

    77.    These representations were false, as Defendant has not paid Plaintiff all commissions he earned according to the terms and conditions communicated to Plaintiff.

    78.    Defendant had no reasonable grounds to believe its representations to Plaintiff were true when they were made, as indicated by its unexplained failure to pay commissions, in

some cases very soon after its representations had been communicated to Plaintiff, in overt, obvious defiance of the unambiguous terms and conditions that had been communicated to Plaintiff.

79. Defendant made the representations to Plaintiff with the intention that Plaintiff would rely on them, to induce Plaintiff (through expectations of enticing compensation) to continue his employment as a competent sales representative for Defendant.

80. Plaintiff reasonably relied on Defendant's representations by continuing to perform his duties, under the belief that Defendant would abide by its representations regarding commissions, as Defendant had abided by its commission-related representations in the past, including but not limited to paying commissions on renewal and expansion sales.

81. Plaintiff was harmed as a direct and proximate consequence of Defendant's negligent conduct in that he continued performing his duties competently for months without receiving approximately $219,000 in commissions he had earned.

82. Ultimately, Plaintiff had no reasonable choice but to resign his employment at Defendant, as it became clear that Defendant was not going to follow through on its representations regarding the payment of commissions.

83. In this manner, Defendant's negligent misrepresentations also caused Plaintiff to suffer loss of all his income for a period of time and severe emotional distress in connection with his loss of employment.

84. Pursuant to Civil Code section 3287, Plaintiff is entitled to recover prejudgment interest as of the time any specific amounts of damages were ascertainable.

## SIXTH CAUSE OF ACTION
### (Quasi-Contract/Quantum Meruit)

85. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint.

86. Defendant communicated to Plaintiff certain terms and conditions governing the earning and payment of commissions for sales of Defendant's products and services.

87. The communications comprised the semi-annual IPL's, the lists of customers in

Plaintiff's sales team's territory and sales group that Defendant supplied semi-annually, and occasional additional incentives communicated in emails, such as the one described above related to fourth quarter 2018 sales that applied to the Dolby sale (and possibly other sales).

88. Even if for any reason Defendant's communications to Plaintiff about the terms and conditions concerning commissions, or any portion of those terms and conditions, did not render those terms and conditions contractual, nevertheless, Plaintiff performed sales-related services for Defendant at Defendant's request.

89. Plaintiff's services for Defendant were rendered under the reasonable expectation that Defendant would compensate him in accordance with the terms and conditions concerning commissions that had been communicated to him, as Defendant had done so in the past, including but not limited to paying commissions on renewal and expansion sales.

90. Defendant did not pay Plaintiff commissions in accordance with the terms and conditions that had been communicated to him, but it received the full benefit of all the sales revenue generated by Plaintiff's sales.

91. The reasonable value of Plaintiff's sales services rendered is represented by that amount that Plaintiff would have received if Defendant had paid him in accordance with the terms and conditions concerning commissions that it had communicated to him, which comes to approximately $219,000 more than Plaintiff actually received as compensation for his services.

92. As a result of failing to pay Plaintiff what he reasonably expected for his services, Defendant has been unjustly enriched in the amount of approximately $219,000 and should therefore have to pay Plaintiff that amount as restitution.

93. Pursuant to Civil Code section 3287, Plaintiff is entitled to recover prejudgment interest as of the time any specific amounts of damages were ascertainable.

### SEVENTH CAUSE OF ACTION
### (Waiting Time Penalties)

94. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint.

95. Labor Code section 202(a) requires that all wages (which includes commissions

that are numerically ascertainable) owed by an employer be paid on the effective date of resignation if the resigning employee gave at least 72 hours' notice.

96. Labor Code section 203(a) provides that the employee is entitled to an extra day's pay for every day the employer willfully withholds any of the wages owed, up to a maximum of 30 days.

97. Plaintiff gave Defendant ten days' advance notice of his resignation, which took effect on July 19, 2019.

98. Although Plaintiff had demanded and identified all the commissions at issue in this lawsuit since long before his resignation, and all such commissions owed were ascertainable as of Plaintiff's resignation date, Defendant has willfully failed and refused to pay all commissions it owes to Plaintiff up to the time this lawsuit was filed.

99. Accordingly, Defendant owes Plaintiff the maximum 30 days' waiting time penalties pursuant to Labor Code section 203.

**PRAYER**

WHEREFORE, Plaintiff respectfully prays for relief as follows:

1. Unpaid earned commissions, pursuant to the First and Second Causes of Action;

2. Compensatory damages, including both general and special damages, pursuant to the First Through Fifth Causes of Action;

3. Punitive damages, pursuant to the Third and Fourth Causes of Action;

4. The reasonable value of services Plaintiff rendered to Defendant, pursuant to the Sixth Cause of Action;

5. Maximum waiting time penalties for failure to pay all wages owed on the effective date of resignation, pursuant to the Seventh Cause of Action;

6. Prejudgment interest on all unpaid commissions and damages as of the time the amount of such commissions or damages was ascertainable;

7. Costs of suit incurred;

8. Reasonable attorneys' fees pursuant to Labor Code section 218.5; and

9. Such other relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff Daniel Lucas hereby demands a jury trial to adjudicate all triable causes of action and issues.

DATED: January 7, 2020

Respectfully submitted,

LAW OFFICES OF CODY JAFFE

By: /s/ Cody Jaffe
Cody Jaffe

Attorney for Plaintiff
DANIEL LUCAS