UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL LUCAS,<br><br>    Plaintiff,<br><br>v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br><br>    Defendant. | Case No. 20-cv-00141-JCS<br><br>**ORDER DENYING MOTION TO DISMISS IN PART FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 36 |

## I.    INTRODUCTION

Plaintiff Daniel Lucas asserts claims for breach of contract, misrepresentation, and related theories against Defendant International Business Machines Corporation ("IBM") based on IBM's alleged failure to pay all commissions owed for Lucas's work as a sales representative. The Court previously granted in part a motion to dismiss Lucas's claims, and Lucas filed an amended complaint. IBM now moves once again to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure—in particular, failure to meet the heightened pleading standard of Rule 9(b) for aspects of Lucas's claims of intentional and negligent misrepresentation and false promise. The Court found the matter suitable for resolution without oral argument and vacated the hearing previously set for August 7, 2020. For the reasons discussed below, IBM's motion is DENIED.[1]

## II.    BACKGROUND

### A.    The Court's Previous Order

On IBM's previous motion to dismiss all of Lucas's claims, the Court held that Lucas had sufficiently alleged that IBM's Incentive Plan Letters ("IPLs") setting forth the circumstances

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

where Lucas would receive commissions on sales were enforceable contracts, and that Lucas had sufficiently alleged that IBM breached the terms of the IPLs. Order re Mot. to Dismiss ("1st MTD Order," dkt. 29)[2] at 6–10. The Court therefore declined to dismiss Lucas's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and failure to pay waiting time penalties on past-due commissions as required by the California Labor Code. *Id.* at 10, 16. The Court also declined to dismiss Lucas's claim for quantum meruit or quasi-contract, holding that although Lucas had sufficiently alleged that the IPLs were contracts, the quasi-contract claim could proceed in the alternative because the Court might conceivably conclude on an evidentiary record that the IPLs are not enforceable contracts. *Id.* at 15–16.

As for Lucas's intentional misrepresentation and false promise claims, the Court held that Lucas had only satisfied Rule 9(b)'s heightened pleading standard with respect to commissions allegedly owed for one sale to Dolby, where Lucas's complaint identified an October 2018 email from a supervisor setting forth a special incentive for sales of certain products, which Lucas alleged that he should have received (but did not) for the Dolby sale. *Id.* at 12. The Court held that Lucas's allegations as to other purportedly unpaid commissions lacked sufficient particularity:

> He has not alleged the customers to which he sold products, the amount of commissions, if any, that IBM paid him for those sales, or the total amount that he should have received under the IPLs or some other purported promise. It is not clear whether Lucas believes that the IPLs themselves are sufficient to constitute a promise to pay commissions on sales to existing customers or whether such an understanding requires considering IBM's past practice, and the parties have not addressed the extent to which past practice can support a fraud claim. To the extent that Lucas cites as misrepresentations other IBM employees' alleged acknowledgement of commissions owed after Lucas had made the sales at issue, he has not explained how those acknowledgements would have been intended to defraud him, or how, if at all, he relied on those acknowledgments to his detriment. Lucas's vague allegations that the promise of ongoing commissions at issue for the Dolby sale could also apply to "possibly more" and "possibly other sales," Compl. [(dkt. 1)] ¶ 23, are also inconsistent with Rule 9(b)'s particularity requirement, and Lucas has provided no explanation of the nature of the parties' disagreement with respect to the May and June 2019 sales.

---

[2] *Lucas v. Int'l Bus. Machines Corp.*, No. 20-cv-00141-JCS, 2020 WL 2494562 (N.D. Cal. May 14, 2020). Citations herein to the Court's previous order refer to page numbers of the version filed in the Court's ECF docket.

*Id.* at 12–13. Although those defects warranted dismissal of Lucas's non-Dolby fraud claims with leave to amend, the Court determined that Lucas had sufficiently alleged intent to defraud and justifiable reliance. *Id.* at 13–15.

IBM moved to dismiss Lucas's negligent misrepresentation claim solely for failure to allege justifiable reliance. *Id.* at 15. Because the Court determined that Lucas's allegations of that element of the claim were sufficient, the Court allowed that claim to proceed. *Id.* The Court noted that other district courts have disagreed as to whether Rule 9(b)'s heightened pleading standard applies to negligent misrepresentation claims, but declined to resolve that issue sua sponte. *Id.* at 15 n.7.

### B. Allegations of the First Amended Complaint

Because a plaintiff's allegations are generally taken as true in resolving a motion to dismiss under Rule 12(b)(6), this section summarizes the allegations of Lucas's complaint as if true. Nothing in this order should be construed as resolving any issue of fact that might be disputed at a later stage of the case.

Lucas worked for a company that was acquired by IBM, and he became an IBM employee in April of 2014. 1st Am. Compl. ("FAC," dkt. 32) ¶ 8. He continued in the same role, selling subscriptions for software and cloud storage to corporate customers, until he resigned in July of 2019. *Id.* ¶¶ 9–10, 37.

IBM paid Lucas a base salary plus commissions on sales, with the terms of his compensation set forth in Incentive Plan Letters ("IPLs") issued for periods of six months at a time. *Id.* ¶¶ 11–13. During the time period at issue, the IPLs provided that Lucas would receive an up-front commission of either eight percent or five percent of each sale, plus an additional three-percent commission paid in monthly installments on some sales. *Id.* ¶ 16.[3] Around the same

---

[3] As a special incentive, an IBM senior vice president told Lucas's sales group in October of 2018 that they would continue to receive the three-percent commission on certain sales even if the customer was later moved to a different territory or sales group. FAC ¶ 34. That incentive applied to only one of Lucas's sales, to Dolby, *id.* ¶ 35, and the Court previously held that Lucas's allegations regarding IBM's failure to pay that ongoing commission satisfied Rule 9(b), 1st MTD Order at 12. With that issue having been resolved by the previous order, the October 2018 sales incentive is not relevant to the claims in dispute in the present motion.

3

time that each IPL was issued, Lucas's supervisor would also email Lucas and his colleagues "a list of corporate customers considered to be within their territory and sales group, meaning they would receive commissions for sales to those entities during that IPL period." *Id.* ¶ 15. IBM never suggested to Lucas that the terms of its IPLs were not binding, and Lucas would not have worked for IBM if it had. *Id.* ¶ 20.

"In many weekly sales meetings held by conference call, typically on Friday mornings, during the periods that [Lucas] was working towards completing each of the sales at issue in this lawsuit, [he] requested and received from [his supervisor Kevin] Williams oral reassurances that the sales in question would qualify for commissions and that [Lucas] would receive commissions per the applicable IPOs." *Id.* ¶ 24. Williams's supervisor, Meghan McCracken, also occasionally participated in those meetings and stated that Lucas would receive commissions for sales he was working on. *Id.* ¶ 25. McCracken also told Lucas at a January 2019 sales conference in New Orleans "that he would receive commissions for certain sales [he] was working toward at that time." *Id.* ¶ 26.

The IPLs did not distinguish renewal or expansion sales from sales to a new customer, which required similar work from sales representatives, and IBM initially paid the same commissions on renewal and expansion sales. *Id.* ¶¶ 27–29. For roughly the last year of Lucas's employment with IBM beginning in mid-2018, however, IBM did not pay Lucas commissions for renewal and expansion sales, and did not communicate to Lucas before those sales that he would not receive commissions. *Id.* ¶ 30. An exhibit to Lucas's complaint lists six renewal or expansion sales for which Lucas claims he is owed commissions. *Id.* ¶ 31 & Ex. A (section titled "Dispute/ Extension Deals").

IBM also failed to pay Lucas the three-percent ongoing monthly commissions for eleven sales that occurred in 2018 and early 2019, as detailed in Lucas's resignation letter, attached as an exhibit to his complaint. *Id.* ¶¶ 32–33 & Ex. B.

At the time that Lucas resigned in July of 2019, he had earned five-percent or eight-percent commissions totaling $72,476 for six sales in May and June of that year, but only received $18,000 from IBM (which might have accounted for two of those sales) in August of 2019,

4

leaving $54,476 unpaid. *Id.* ¶¶ 39–41 & Ex. A (section titled "May / June Deals"). According to Lucas, he was entitled to commissions on those sales because:

> the sales were to customers who were on the list of customers identified as being in [Lucas's] team's territory and sales group during the applicable IPL period, the sales were final, [Lucas's] work obtaining the sales had been completed prior to his resignation, the customers paid [IBM's] invoices associated with those sales, and [IBM] has had ample time to measure business results for the IPL periods at issue.

*Id.* ¶ 42.

In total, Lucas alleges that IBM has failed to pay him commissions he had earned totaling approximately $219,000. *Id.* ¶ 52.

Lucas asserts the following claims: (1) breach of contract, *id.* ¶¶ 46–53; (2) breach of the implied covenant of good faith and fair dealing, *id.* ¶¶ 54–60; (3) intentional misrepresentation, *id.* ¶¶ 61–72; (4) false promise, *id.* ¶¶ 73–84; (5) negligent misrepresentation, *id.* ¶¶ 85–95; (6) quasi-contract or quantum meruit, *id.* ¶¶ 96–104; and (7) waiting time penalties under section 203(a) of the California Labor Code, *id.* ¶¶ 105–11. Lucas asserts, and IBM does not dispute, that the Court has subject matter jurisdiction over his claims under California state law based on diversity of citizenship under 28 U.S.C. § 1332, because Lucas is a citizen of California, IBM is a citizen of New York, and the amount in controversy exceeds $75,000. *See id.* ¶ 6.

### C. The Parties' Arguments

IBM argues that, except for the Dolby sale,[4] Lucas does not satisfy the heightened pleading standard of Rule 9(b) because he has not identified "the specific promises or representations supporting his claims, which disputed commissions were affected by which alleged misrepresentations, the amount of unpaid commissions related to such alleged misrepresentations, and how certain generic comments by IBM representatives defrauded him." Mot. (dkt. 36) at 2. More specifically, IBM contends that Lucas has not identified particular provisions of the IPLs supporting his claims, *id.* at 7; has not specified "which specific deals referenced in Exhibits A

---

[4] All further references herein to the claims sought to be dismissed exclude claims predicated on the Dolby sale, even where, for simplicity and ease of reading, this order does not explicitly restate that exclusion.

and B concern his generalized allegation that IBM misrepresented his customer territory" or "what information on the customer lists is allegedly fraudulent," *id.* at 7–8; has not alleged any sales incentives stated via email other than the one specific to the Dolby sale, *id.* at 8; has not specified exactly when Williams and McCracken reassured him about commissions, what they said, or which deals they discussed, *id.* at 8–9; and has neither identified any "particular misrepresentation made by IBM about commissions on [the May and June 2019] sales" nor—quoting once of the concerns stated in the Court's previous order—explained "'the nature of the parties' disagreement with respect to'" those sales, *id.* at 9 (quoting 1st MTD Order at 13). According to IBM, those omissions require dismissal of Lucas's claims for intentional misrepresentation and false promise, except as those claims relate to the Dolby sale. *Id.* at 9.

IBM also argues, without significant explanation, that although federal district courts have disagreed as to whether claims for negligent misrepresentation under California law must satisfy Rule 9(b), the Court should follow decisions from this district holding that Rule 9(b) applies to such claims, and thus should also dismiss Lucas's negligent misrepresentation claim except as it related to the Dolby sale. *Id.* at 9–10.

Lucas contends that his allegations satisfy Ninth Circuit precedent considering Rule 9(b) because they provide IBM sufficient notice of the alleged false statements to allow it to investigate the claims and prepare a defense. *Id.* at 6–7 (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *Semegen v. Weidner*, 780 F.2d 727, 735 (9th Cir. 1985)). He cites decisions from this district holding that a plaintiff need not provide verbatim quotations of purportedly fraudulent representations. *Id.* at 7–8 (citing, *e.g.*, *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1138, 1143 (N.D. Cal. 2010), *vacated in part on reconsideration on other grounds*, 771 F. Supp. 2d 1156 (N.D. Cal. 2011)). Lucas argues that his amended complaint addresses the concerns stated in the Court's previous order, in that the attachments to this complaint identify the customers and sales at issue and the amount Lucas believes he should have been paid, his allegations make clear that he was not paid commissions for those sales except for the $18,000 he received after his resignation, and the amended complaint clarifies that Lucas is relying on the IPLs, customer lists, and statements by Williams and McCracken (and not on past practice or post-

6

sale concessions by IBM employees that Lucas should have received commissions) as the purported misrepresentations supporting his claims. *Id.* at 8–10. In Lucas's view, his allegations provide the "who, what , when, where and how" sufficient to support his fraud claims. *Id.* at 11–14. Lucas also argues that this Court should follow the Central District of California's decision in *Cutler v. Rancher Energy Corp.*, No. SACV 13-00906-DOC (JPRx), 2014 WL 1153054 (C.D. Cal. Mar. 11, 2014), holding that Rule 9(b) does not apply to claims of negligent misrepresentation, and that although several district court decisions have held to the contrary, they have provided little if any reasoning to support that conclusion. Opp'n at 14–16.[5]

      IBM argues in its reply that the amended complaint's references to the IPLs and oral reassurances remain "oblique[]," and that Lucas's failure to identify more specifically the relevant portions of the IPLs or what his managers told him warrants dismissal of his fraud claims. Reply (dkt. 41) at 1–2. IBM suggests for the first time in its reply that "there was no fraudulent misrepresentation" because the IPLs condition all commissions on a sales representative "achieving" a sale as that term is defined in the IPLs. *Id.* at 2–3. IBM contends that *Kowalsky* and other decisions from this district on which Lucas relies are distinguishable in that they included more specific allegations of allegedly fraudulent misrepresentations—e.g., that a printer could meet certain speed metrics, or that a motor home had been thoroughly inspected and refurbished and was in excellent condition. *Id.* at 3–4. IBM distinguishes the Ninth Circuit's *Semegen* decision because the plaintiffs there provided affidavits detailing the defendants' knowledge of specific material facts. *Id.* at 4–5. With respect to negligent misrepresentation, IBM contends that cases finding Rule 9(b) inapplicable have looked to the nature of the particular claims asserted and found them to be grounded more in negligence than in fraud, whereas here, Lucas bases his negligent misrepresentation claim on the same allegations as his fraud claims. *Id.* at 5–6.

---

[5] Lucas also cites an unpublished and non-precedential 2005 decision from the Ninth Circuit on this point. *See* Opp'n at 15 n.1. Citations to unpublished Ninth Circuit decisions predating 2007 are prohibited by the Ninth Circuit's rules, and thus also by this Court's local rules, subject to narrow exceptions not applicable here. *See* 9th Cir. Rule 36-3(c); N.D. Cal. Civ. L.R. 3-4(e).

### III. ANALYSIS

#### A. Legal Standard

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court generally takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

Rule 9(b) of the Federal Rules of Civil Procedure sets a heightened pleading standard for claims based on fraud. "In alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Ninth Circuit has held that in order to meet this standard, a "complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity," *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993), or in other words, "'the who, what, when, where, and how' of the misconduct charged," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted). "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns*, 567 F.3d at 1124 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)) (ellipsis in original).

### B. Lucas's Allegations Satisfy Rule 9(b)

The Court agrees with Lucas that the allegations of his amended complaint provide IBM sufficient notice of the basis of Lucas's claims to satisfy Rule 9(b).

Lucas identifies "who" purportedly misled him: IBM and Williams, in issuing customer lists containing the customers to whom Lucas sold products and IPLs stating that he would receive commissions for such sales, subject to certain exceptions that Lucas alleges do not apply, FAC ¶¶ 15–16, 42; and Williams and McCracken, in reassuring Lucas while he was working on those sales that he would receive commissions as stated in his IPLs, *id.* ¶¶ 24–26. The allegations of McCracken's reassurances would probably not be sufficient alone to meet Rule 9(b), because Lucas does not identify which sales or customers McCracken addressed. *See id.* ¶¶ 25–26 (alleging only that McCracken attended sales meetings on "rare occasions" and reassured Lucas regarding "sales then in progress," and that McCracken assured Lucas at the conference in New Orleans "that he would receive commissions for certain sales"). Lucas's allegations regarding the IPLs, customer lists, and Williams's reassurances, however, do not suffer from the same defect— Lucas alleges that each applied to *all* of the sales in question, and details those sales in the attachments to his complaint. *Id.* ¶ 24 ("[D]uring the periods that [Lucas] was working towards completing *each* of the sales at issue in this lawsuit, [Lucas] requested and received from Mr. Williams oral reassurances that the sales in question would qualify for commissions and that [Lucas] would receive commissions . . . ." (emphasis added)); *id.* ¶ 42 ("With respect to *all* the

9

sales in question, the sales were to customers who were on the list of customers identified as being in [Lucas's] team's territory and sales group during the applicable IPL period . . . ." (emphasis added)); *id.* Exs. A, B (listing the sales in question). Because all of the disputed commissions at issue were purportedly promised by the IPLs and customer lists and by Williams, and because McCracken is not herself a defendant, McCracken's alleged reassurances are not essential to any claim.

Lucas identifies "what" representations are at issue: that he would receive commissions of five percent or eight percent on his sales detailed in Exhibit A to his complaint, as well as three-percent ongoing monthly commissions for his sales detailed in Exhibit B to his complaint. *See id.* ¶¶ 16, 24, 31–33, 39, 41, 42 & Exs. A, B. With respect to expansion or renewal sales, he alleges that the IPLs called for commissions on sales generally without excluding those categories of sales, and that Williams reassured Lucas that he would receive commissions on *each* of the sales at issue. *Id.* ¶¶ 24, 27. A plaintiff need not provide verbatim quotations of purported misrepresentations to satisfy Rule 9(b); it is enough that Lucas has alleged the substance of IBM's alleged representations. *See Kowalsky*, 771 F. Supp. 2d at 1143 (holding that a plaintiff's allegations that Hewlett-Packard represented certain capabilities of its printer were sufficient even though the plaintiff "could have provided quotes" but did not do so).

Lucas identifies "when" and "where" he received these assurances: in IPLs and customer lists emailed to him each January and July, and in weekly sales meetings typically held on Fridays. FAC ¶¶ 13, 24. Although Lucas has not identified the particular date of each email and sales meeting, these allegations provide sufficient information for IBM to investigate his claims and prepare its answer and defense.

Finally, Lucas identifies both "how" IBM allegedly misled him (by assuring him via emailed customer lists and IPLs, and in conference call sales meetings, that he would receive commissions) and how he relied on those representations to his detriment (by continuing to work for IBM and making sales for which he did not receive commissions). *See id.* ¶¶ 12–16, 20, 24–25, 30–33, 39–42 & Exs. A, B.

To the extent IBM suggests in its reply that Lucas might not have been entitled to the

10

disputed commissions under the terms of the IPLs, that is a separate question from whether Lucas has alleged misrepresentations with sufficient particularity under Rule 9(b). Lucas's amended complaint provides IBM sufficient information about his claims for IBM to present that defense on the merits if it so chooses.

Because the Court concludes that Lucas's allegations satisfy Rule 9(b), the Court need not decide whether his negligent misrepresentation claim requires such particularity. Assuming for the sake of argument that it does, Lucas has met his burden under Rule 9(b).

### IV. CONCLUSION

For the reasons discussed above, IBM's motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: August 7, 2020

JOSEPH C. SPERO
Chief Magistrate Judge